[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was commenced by the plaintiffs' complaint, dated 4/15/92, with a return date of May 19, 1992. The defendants filed an answer and special defense, dated August 25, 1992. On September 14, 1992, the plaintiffs filed a reply to the defendants' special defense. The plaintiff is Dubauskas Pesce Builders, Inc., whom the court assumes is a corporation, although nowhere in the complaint does it so state. The plaintiff is a general contractor who builds custom homes. The defendants, Robert Burgess and Joseph Cusick, are both dry wall and taping contractors who were partners in 1989 in that business. They are no longer partners.
The plaintiff was building a custom home on Mirey Dam Road, in Middlebury, Connecticut, and it hired the defendants to do dry wall taping in said home on or about January 17, 1989, for a price of $3,200.00 (Exhibit A). Also, the plaintiff paid $70.00 to the defendants for additional work. The defendants took approximately three weeks to do said taping and finished in early April 1989. Sometime after the homeowners moved into said home, Richard Dubauskas, the plaintiff's Vice President, received a complaint from said homeowner about the ceilings in said home. He testified that the butt joints in the ceilings in various rooms were not properly taped. He stated this became noticeable when ceiling lights were installed and turned on in said house. The rooms involved were the four bedrooms, foyer, family room, living room and kitchen. However, the homeowner did not want the kitchen butt joints corrected because they were not too bad, and the disruption caused by correcting them would be great. Mr. Dubauskas stated he called the defendant, Robert Burgess, concerning this problem. Mr. Dubauskas said the defendant, Robert Burgess, came and tried to correct the problem, but that because there were so many butt joints to repair, he told Mr. Dubauskas to hire someone to make said repairs as he was too busy. Thus, the plaintiff hired All State Drywall Company to repair said ceilings and paid that firm $1,800.00 (Exhibit C) for said repairs. After the ceilings were repaired, the plaintiff hired J. Charles Painting Company to repaint those areas which All State Drywall Company had repaired. The plaintiff paid $1,800.00 to J. Charles Painting Company for said painting (Exhibit D). Mr. Dubauskas then testified he paid Ralph Eastwood $700.00 to revarnish the oak floors in said home that were scratched when the drywall taping and painting had to be CT Page 6076 redone as aforesaid (Exhibit E). Mr. Dubauskas testified that he then had to remove all of the marble in the foyer because it was damaged by reason of the retaping and repainting. He subsequently paid B.C. Tile Company $3,600.00 to put down new marble in said foyer. Lastly, Mr. Dubauskas testified that the plaintiff had to hire Apple Glass Maintenance Company to clean the entire house at a cost of $410.00 (Exhibit F). Thus, the plaintiff is seeking damages of $8,310.00 from the defendants.
The defendants, Robert Burgess and Joseph Cusick, both testified during the trial. Mr. Burgess testified that he and the defendant, Joseph Cusick, did all of the drywall taping for said home. It took fourteen working days to complete this work. He testified when it was concluded, he and Mr. Dubauskas walked through the whole job, room by room, to inspect the defendants' work. He stated it was dark in said house, but that he had a light and Mr. Dubauskas had a taping light. When the inspection was completed, the defendants received the balance of the contract price due them. Mr. Burgess testified about one and one half (1-1/2) years later, he received a call or a letter from Mr. Dubauskas concerning a problem with said home. Mr. Burgess went to said home and inspected the ceilings. He stated he saw a shadow six to eight feet long in the ceiling. In his opinion, this indicated that the 2 x 6 studs in the ceiling were "crowned down and not up", as they would be if properly installed. He stated sometimes you cannot see this problem when you are working on a job. Mr. Burgess said if it was a problem with the taping of the butt joints, the shadow therefrom would only be four feet. He testified he advised Mr. Dubauskas that in his opinion, the problem was with the crowned 2 x 6 studs being installed upside down and not with the drywall taping. He stated Mr. Dubauskas said "help me out and fix it." Mr. Burgess testified he spent one week in the house with his brother attempting to repair said butt joints. He said he told Mr. Dubauskas that the proper way to repair the problem was to go to the attic and to cut the ceiling stud and replace it with 2 x 4 boards. In effect, Mr. Burgess said this was a framing problem, not a drywall taping problem. Mr. Burgess stated he did not go to the attic to confirm his opinion that the framing was defective because it was not necessary as he had developed an eye for that over the years.
After hearing all the evidence, the court finds that the plaintiff has not sustained its burden of proof, and therefore, finds the issues for the defendants on the plaintiff's complaint. Judgment may enter accordingly. CT Page 6077
William J. Sullivan, J.